IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 1:08-CR-436 |
| v. | : | **JUDGE SYLVIA H. RAMBO** |
| **LYNDA DIEU PHAN**<br>**JUSTIN PHAN**<br>**DUC CAO NGUYEN** | : | |

# M E M O R A N D U M

Before the court is a motion by Defendants to suppress physical evidence seized pursuant to two search warrants. (Doc. 57.) For the reasons that follow, the motion will be granted in part and denied in part.

**I.** **Background**

**A.** **Procedural History**

On December 10, 2008, Defendants Lynda Dieu Phan, Justin Phan, and Duc Cao Nguyen were indicted on charges of (1) conspiracy to commit forced labor and marriage fraud in violation of 18 U.S.C. § 371; (2) forced labor in violation of 18 U.S.C. §§ 1589, 1594; (3) trafficking with respect to forced labor in violation of 18 U.S.C. § 1590, 1594; (4) two counts of marriage fraud in violation of 8 U.S.C. § 1325(c); and (5) forfeiture in violation of 21 U.S.C. § 853.

On April 6, 2009, Defendant Lynda Dieu Phan filed the instant motion to suppress the physical evidence seized pursuant to the warrants (Doc. 57) and a supporting brief (Doc. 58), in which the other Defendants join. On April 21, 2009, the government filed its response. (Doc. 65.) A suppression hearing was held on April 27, 2009. The suppression motion is ripe for disposition.

### B. **Factual Findings**[1]

On August 7, 2008, Immigration and Customs Enforcement ("ICE") Special Agent Stefanie Fritzges filed applications for two search warrants: one for Defendant Lynda Dieu Phan's home located at 565 Sandpiper Lane in New Cumberland, Pennsylvania (Doc. 58, Ex. 1), and the other for Phan's business, the Da Vi Nail Salon located in a Walmart at 1800 Loucks Road, York, Pennsylvania (Doc. 58, Ex. 4). Both applications were supported by identical affidavits by Agent Fritzges. In the affidavits, Fritzges describes her experience investigating human smuggling and trafficking, and her investigation of Defendants' suspected criminal activity to date. The investigation was primarily based on an August 4, 2008 interview with one of the alleged victims in this case, A.V., a Vietnamese national who was brought to the U.S. by Lynda Dieu Phan to work in her nail salon. Based on the interview with A.V., Agent Fritzges learned the following facts, as set forth in the affidavits:

In 2000, when A.V. was 20 years old, Lynda Dieu Phan made arrangements with A.V.'s aunt to bring A.V. to the United States. According to A.V., Phan promised to pay for the plane ticket and the immigration paperwork, which A.V. would then have to pay back by working in Lynda Dieu Phan's nail salon. In order to obtain a visa, Lynda Dieu Phan instructed A.V. to pretend that she was engaged to Lynda Dieu Phan's brother, Justin Phan, and in August 2004, A.V. entered the United States as Justin Phan's fiancee. Soon after, A.V. and Justin Phan were married, though he lived with his girlfriend and children in another house. Thereafter, Lynda Dieu Phan took A.V. to an immigration attorney who filed an

---

[1] These facts are drawn from the affidavit accompanying the warrant application, and the testimony of Agent Stefanie Fritzges at the suppression hearing. Defendants chose not to present any witnesses.

immigration application on behalf of A.V. based on the marriage. Lynda Dieu Phan kept possession of all of A.V.'s immigration documents, and did not permit A.V. to hold any of them. Lynda Dieu Phan charged A.V. for the attorney's fees associated with the immigration paperwork.

Soon after A.V. arrived in the U.S., Lynda Dieu Phan took her to a bank, where Lynda Dieu Phan directed her to sign documents. A.V. was unable to read or write English, and could not understand the documents she signed. A.V. never received any bank statements. Thereafter, every year around January, Lynda Dieu Phan took A.V. back to the bank to sign more documents. Each time, Lynda Dieu Phan folded or concealed the documents so that A.V. could not see what she was signing.

A.V. worked at Lynda Dieu Phan's nail salons, first at Nail Palace, and later at the Da Vi Nail salon. She worked Monday through Saturday from 10:00 a.m. until 9:00 p.m., and five hours on Sundays, and was only permitted to take a break when there were no customers. For this work she received no payment from Lynda Dieu Phan, but she was permitted to keep some of the money given to her by customers as tips. A.V. lived in Lynda Dieu Phan's house, where A.V. also cooked and cleaned. Lynda Dieu Phan told A.V. that she would have to work without pay in the nail salons for three years to reimburse Lynda Dieu Phan for the costs associated with bringing her to the U.S., and for rent and food at Lynda Dieu Phan's house. Because A.V. could not drive, Lynda Dieu Phan drove her to and from work every day.

Six months after A.V. arrived in the United States, Lynda Dieu Phan arranged for a second Vietnamese female, T.V., to come to the U.S. under a similar arrangement. The affidavit alleges that T.V. was fraudulently married to Duc Cao Nguyen, Lynda Dieu Phan's boyfriend and the father of her children. T.V. shared a

3

room with A.V. and worked at the Da Vi Nail Salon. T.V. and A.V. were required to pay Lynda Dieu Phan for bunkbeds, but the beds included no mattresses and the women slept on the floor of the room.

Lynda Dieu Phan instructed A.V. not to tell customers anything about herself or her situation. Lynda Dieu Phan also threatened to send A.V. back to Vietnam if she made mistakes at work, and to send her to jail if she told anyone what was happening to her. Despite these threats, both A.V. and T.V. spoke with customers when Lynda Dieu Phan was not present, and both received cards and gifts from customers, which they hid from Lynda Dieu Phan.

A.V. worked for Lynda Dieu Phan for three years without pay, yet Phan did not advise A.V. that she had fulfilled her agreement and A.V. continued to work without complaint. However, in November 2007, she confronted Lynda Dieu Phan and asked to be paid for the hours that she worked at the nail salon. In response, Lynda Dieu Phan began to charge A.V. $200 per month for rent, and about $300 per month for utilities. Lynda Dieu Phan also demanded payment for attorney fees and travel expenses, in varying and inconsistent amounts ranging from $5000 to $10,000. Lynda Dieu Phan continued to fail to pay A.V. for her work at the nail salon.

A.V.'s conditional residence status expired in April 2008, and at some point she realized that Lynda Dieu Phan had not filed immigration paperwork for her. Fearful that she was in the United States unlawfully, A.V. decided to leave Lynda Dieu Phan's house. With the assistance of a customer from the nail salon, on June 1, 2008, A.V. left Lynda Dieu Phan's house at 1:30 a.m. with her belongings wrapped in a sheet.

On August 4, 2008, A.V. was interviewed by ICE agents. She informed the agents that Lynda Dieu Phan's home was located at 565 Sandpiper Lane in New Cumberland, Pennsylvania, a fact the agents confirmed through a public access

4

database query.  Additionally, the query indicated that Tony Phan, Duc Phan, and Duc Cao Nguyen were also associated with the address.  The agents conducted surveillance of the property and observed a gray Toyota Highlander parked in the driveway.  The agents learned that the vehicle was registered at that address to Cao Duc Nguyen.

According to Agent Fritzges, these facts constituted probable cause to believe that evidence of forced labor, human trafficking, and marriage fraud would be found in the Da Vi Nail Salon and at Lynda Dieu Phan's home.  On August 7, 2009, U.S. Magistrate Judge J. Andrew Smyser issued the search warrants for Lynda Dieu Phan's home (Doc. 58, Ex. 2) and the Da Vi Nail Salon (Doc. 58, Ex. 5).  Both warrants included an identical description of the items to be seized:

> Items to be Searched for and Seized
>
> Identification documents of a Vietnamese national identified in the affidavit as A.V. and a Vietnamese national identified in the affidavit as T.V.; business documents relating to the payroll and employee records of the Nail Palace and Da Vi Nail Salon and to the employment of the Vietnamese nationals identified in the affidavit as A.V. and T.V.; documentary evidence relating to marriage fraud, forced labor, and involuntary servitude schemes involving Lynda Dieu Phan, Justin Phan, Duc Cao Nguyen and others and the individuals identified in the affidavit as A.V. and T.V.; bank records for the Nail Palace, Da Vi Nail Salon, Lynda Dieu Phan, Justin Phan, and Duc Cao Nguyen, and the individuals identified in the affidavit as A.V. and T.V.; tax records for the Nail Palace, Da Vi Nail Salon, Lynda Dieu Phan, Justin Phan, and Duc Cao Nguyen, and the individuals identified in the affidavit as A.V. and T.V.; and any and all other documentary evidence related to the violations set forth in the affidavit.

(Doc. 58, Ex. 2, Attach. B; Doc. 58, Ex. 5, Attach. B.)

Pursuant to the warrants, ICE agents searched both the Da Vi Nail Salon and the home the following morning.  The warrant return for the Nail Salon provides the following description of items seized: "1 bag miscellaneous documents."  (Doc. 58, Ex. 6.)  The warrant return for the search of the home is similarly lacking in detail, providing the following description of the items seized: "safe deposit box key

5

#363, Compaq Presario computer S/N MXK338P82, miscellaneous documents, and $134,682 in U.S. currency." (*Id*., Ex. 3.)

Three of the items seized from the home were not specifically listed in the warrant: the safe deposit box key, the computer, and the currency. At the suppression hearing, Agent Fritzges testified that these items were all observed in plain view while the agents were effectuating the search pursuant to the warrant. Agent Fritzges testified that the key was seized because the agents were seeking identity documents for A.V. and T.V. and believed that they might be located in a safe deposit box. The computer was seized because it was located in Lynda Dieu Phan's home office, and the agents believed that it might contain some of the documents specified in the search warrant.[2] Finally, the currency was seized because the agents believed it to be the illegal proceeds of Lynda Dieu Phan's business.

The warrant returns also both included "miscellaneous documents." An inventory attached to the warrant return for the house seems to indicate that these documents filled five boxes. (*See* Doc. 58, Ex. 3 at 4.) At the suppression hearing, Agent Fritzges testified that these items included the following: a photo album which included what appeared to be photos of a wedding between Lynda Dieu Phan and Duc Nguyen (who was married to T.V.); a cookie tin containing Walmart receipts for purchases by A.V. and T.V.; documents relating to real estate purchases by Defendants; tax records; housing records; certain utility bills; anything the agents believed was related to businesses of Lynda Dieu Phan; payroll records for the nail salons; family photographs; Lynda Dieu Phan's high school records; correspondence

---

[2] The agents subsequently sought and obtained search warrants for the safe deposit box and the computer. However, the safe deposit box was empty at the time the agents performed the search, and the computer contained no evidence of criminal activity.

and documents relating to Lynda Dieu Phan's mother; and the business licenses for Lynda Dieu Phan's nail salons.

Also included among the miscellaneous documents seized from the home were many documents written in Vietnamese. None of the agents participating in the search could read or understand Vietnamese. ICE hired an interpreter who accompanied A.V. first at the search of the nail salon and later at Lynda Dieu Phan's home, where A.V. tried to retrieve her identity papers. However, the interpreter was not asked to review any of the Vietnamese documents in the home, and ICE chose not to hire another interpreter for that purpose. According to Agent Fritzges, the Vietnamese language documents were seized in order to be interpreted. The record does not reveal whether the documents have been interpreted, though Agent Fritzges testified that she met twice with defense counsel to review documents, and that some documents were returned to Defendants.

## II.  **Standard of Review**

The Fourth Amendment to the U.S. Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As a general rule, courts will not suppress items seized by officers in good faith pursuant to a search warrant later invalidated. *United States v. Leon*, 468 U.S. 897 (1984). When considering a suppression motion, the court should first consider the officer's good faith in relying on the warrant, before turning to whether there was probable cause to support the issuance of the warrant. *United States v. $92,422.50 in U.S. Currency*, 307 F.3d 137, 146 (3d Cir. 2002). The Third

Circuit has identified four situations in which an officer's reliance on a warrant is unreasonable:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.*

### III.     Discussion

Defendants challenge the constitutionality of the warrants and the seizures on four grounds: (1) the government deliberately withheld information from the magistrate judge who issued the warrants; (2) the warrant failed to provide probable cause to believe the evidence sought would be found in the locations to be searched; (3) the warrants lacked particularity; and (4) the scope of the search exceeded the warrants. These arguments will be addressed in turn.

#### A.     Withholding of Information From the Magistrate

Defendants argue that all of the evidence seized pursuant to the warrants must be suppressed because the magistrate who issued the warrants was not informed of certain additional alleged facts about the case.

A presumption of validity attaches to an affidavit submitted in support of a search warrant, and a warrant will only be invalidated if the defendant proves by a preponderance of the evidence (1) that the office knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that those statements or omissions were material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56

8

(1978); *United States v. Frost*, 999 F.2d 737, 742–43 (3d Cir. 1993); *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000).

According to Defendants, the warrant should be invalidated because Agent Fritzges omitted the following information from her affidavit in support of the warrants to search Lynda Dieu Phan's home and nail salon:

> What the search warrant leaves out is the fact that Lynda Phan's house was a recently built residence in New Cumberland, Pennsylvania having a value of approximately $400,000; that the prosecutrixes had full run of the house (including their own bedroom, the kitchen and family room containing a large 52" HD television); that Lynda Phan did not work with them, they went to work by themselves at different locations and were alone in the shops for long periods of time with customer and other shop employees; that the other shop employees worked under similar conditions; that tips are the main salary for someone working in a nail salon doing manicures and pedicures and they were allowed to keep their tips as were the other employees; and, that it is an established custom in Vietnam to sleep on the floor rather than mattresses and, in fact, Lynda Phan and her children and the other resident of Lynda Phan's home (co-Defendant Duc Cao Nguyen) also slept on the floor as opposed to mattresses.

(Doc. 58 at 10.) Defendants further complain that the affidavit did not mention that A.V. and T.V. attended school in Philadelphia to obtain state licenses, and that A.V. and T.V. allegedly have a motive to fabricate their allegations in order to obtain legal status in the U.S. Finally, Defendants object to the affidavit's characterization of A.V.'s exit from Lynda Dieu Phan's house at 1:30 a.m. with her belongings in a sheet as an "escape."

These allegations are insufficient to satisfy the heavy burden required to invalidate a warrant under *Franks*. First, Defendants have failed to establish a number of these alleged additional facts by a preponderance of the evidence. For instance, Defendants offered no evidence that sleeping on the floor is an established Vietnamese custom; to the contrary, Agent Fritzges testified that Lynda Dieu Phan and Duc Cao Nguygen shared a bed, and that A.V. and T.V. slept on the floor only because the beds in their room lacked a mattress. Likewise, Agent Fritzges'

9

characterization of A.V.'s egress from Lynda Dieu Phan's home as an escape is well supported by her affidavit and her undisputed testimony at the hearing, and Defendants offered no evidence to disprove it.

Second, Defendants presented no evidence that Officer Fritzges was aware of any of the remaining facts at the time she swore out her affidavit, let alone that she deliberately or recklessly omitted them. At most, omission of these facts would amount to negligence or innocent mistake, neither of which is sufficient to invalidate the warrant. *Franks*, 438 U.S. at 171. Finally, even if these facts had been included, the affidavit would still support a finding of probable cause to believe that Defendants engaged in the crimes alleged. The value of Lynda Dieu Phan's home and the amount of unsupervised time by A.V. and T.V. does not negate the charges of involuntary servitude and marriage fraud described in the affidavit. Here, the involuntary servitude was effectuated through economic coercion, including years of work without pay and restricted access to immigration papers, money, and transportation.

In sum, the arguments presented by Defendants are more appropriate for trial than a suppression hearing. Defendants have failed to establish by a preponderance of the evidence that the warrants were invalid due to any omissions by Agent Fritzges in the affidavit. Accordingly, Defendants' argument that the warrant should be invalidated pursuant to *Franks* fails.

### B. Probable Cause

Defendants also argue that there was no probable cause to believe that the evidence sought in the warrants would be found at the locations the agents sought to search because the two warrants simultaneously sought the same evidence from two different locations. This argument has some intuitive appeal—after all, the same item cannot be in two different places at the same time. However, the evidence

10

sought in this case consisted of various types of business and family records, which could be found in multiple locations at once.

Defendants further argue that the affidavit only includes facts providing probable cause to support the criminal charges, but fails to include facts providing probable cause to believe that evidence of those crimes would be found at the locations to be searched. The court disagrees. The affidavit states that the alleged crimes occurred at both the nail salon and the home, and it may be inferred that evidence of these crimes would be found at both locations. Altogether, Defendants have failed to establish that "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *$92,422.50*, 307 F.3d at 146.

### C. <u>Particularity of the Warrant</u>

Defendants further argue that the warrants were so lacking in particularity that they constituted impermissible general warrants. In support of this argument, Defendants point to the warrant return for the home, which indicates that the agents seized "miscellaneous" documents, and items not specified in the warrant, including the computer, the safe deposit box key, and currency.

"A general warrant is a warrant that authorizes a 'general exploratory rummaging in a person's belongings.'" *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The warrant at issue here does not constitute a general warrant because it does not grant the agents unfettered discretion to rummage about Lynda Dieu Phan's home. To the contrary, these warrants authorize the seizure of specific and precise categories of documents to be seized, including bank records, payroll records, identification documents, and evidence of marriage fraud. In no way was either warrant "so facially deficient . . . in failing to particularize the place to be searched or the things

11

to be seized . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 924. Nor does the lack of specificity in the warrant return invalidate the search pursuant to a valid warrant.

### D. Scope of the Search

Defendants also argue that the agents exceeded the scope of the warrant by seizing evidence that was not specifically identified in the warrant, specifically Lynda Dieu Phan's school records, Walmart receipts collected by A.V. and T.V., family records, records of real estate transactions, as well as the safe deposit box key, the computer, and currency. Defendants also challenge the seizure of the Vietnamese language documents. The court agrees with the government that the seizure of the majority of this evidence was authorized by the warrant, and the remaining evidence was permissibly seized pursuant to the "plain view" exception to the warrant requirement. However, the court agrees with Defendants that the seizure of the Vietnamese language documents was unconstitutional.

#### 1. Documents Seized Pursuant to the Warrant

Here, the family and school records fall under the category of documents relating to suspected marriage fraud. The Walmart receipts are documentary evidence relating to suspected involuntary servitude by A.V. and T.V. Additionally, the records of real estate transactions may fall under the category of bank or tax records specified in the warrant.

#### 2. Documents Seized in Plain View

The government argues that the safe deposit box key, the computer, and the currency were lawfully seized under the "plain view" exception to the warrant requirement. Under this exception, law enforcement may seize items found in plain view provided that: (1) the officers were lawfully present at the location searched, (2) the search was not unconstitutional, and (3) the incriminating nature of the item was

immediately apparent. *Horton v. California*, 496 U.S. 128, 136–37 (1990); *see also United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994).

Here, the first two requirements are met—the officers were lawfully present in Lynda Dieu Phan's office pursuant to the search warrant of her house, and the search was not unconstitutional. However, at the hearing the parties disputed the final element—whether the incriminating nature of these items was immediately apparent. The court agrees with the government that while the items seized were not contraband, their incriminating nature was immediately apparent to the agents at the time they were seized.

First, the safe deposit box key was seized because the government had probable cause to believe that Lynda Dieu Phan was in possession of the identity documents of A.V. and T.V. Because A.V.'s identity documents were not found in either the nail salon or the house, the agents reasoned that the documents would likely be found in the safe deposit box. Accordingly, under these circumstances, the incriminating nature of the key was immediately apparent and the seizure of the key was justified under the plain view doctrine.

Likewise, the seizure of the computer was also justified. The search warrant authorized the seizure of documents related to Lynda Dieu Phan's business and payroll. Computers often contain documents related to business. Moreover, in this case, the computer was found in Lynda Dieu Phan's home office, in which the agents discovered many documents related to Lynda Dieu Phan's business. Under these circumstances, it follows that other documents relating to Lynda Dieu Phan's business would also be contained in the computer. Accordingly, the incriminating nature of the computer was immediately apparent, and the officers' seizure of the computer was justified.

Finally, the seizure of the currency was also justified in this case. As they executed the search of Lynda Dieu Phan's home office, the agents discovered $134,682 in U.S. currency, which they seized as proceeds from Defendants' alleged criminal activity. At the time of the seizure, Agent Fritzges testified that the agents were unaware of Lynda Dieu Phan's involvement in any other business activity or source of income apart from the nail salons in question, which generated revenue as a result of the unpaid labor of A.V. and T.V. Under these circumstances, the incriminating character of the currency was immediately apparent, and the agents were justified in seizing the currency as the proceeds of suspected criminal activity.

### 3. Vietnamese Documents

The seizure of the Vietnamese documents presents a closer question. At the time these documents were seized, the agents were unable to determine whether they were authorized pursuant to the warrant, or otherwise evidence of criminal activity. The Third Circuit considered the issue of the seizure of foreign language evidence in *United States v. $92,422.50*, 307 F.3d 137 (3d Cir. 2002). That case involved the seizure of Chinese language documents at a business believed to be engaged in fraud. Although the warrant anticipated and permitted the seizure of Chinese language documents, none of the officers executing the warrant could read Chinese, and so they seized all of the Chinese documents to be interpreted later.

The Third Circuit held that the seizure of foreign language documents is assessed by a reasonableness standard, balancing "on the one hand, the degree to which a search or seizure intrudes upon an individual's privacy and, on the other, the degree to which the search or seizure is needed for the promotion of legitimate governmental interests." *Id.* at 153 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The court explained that "[i]f, for example, there is an urgent need to execute a warrant for documents written in a language that relatively few people in

the jurisdiction can read, it may be reasonable to proceed without the assistance of someone able to read the language." *Id.* at 153. However, the court made clear that seizure of foreign language documents is not always permitted, noting that "[i]f officers who are able to read the language in question are readily available, the failure to assign such an officer to assist in executing the warrant may be unreasonable." *Id.* at 153–54. In the case before it, the Third Circuit concluded the record was insufficient to determine whether the seizure of the Chinese documents was reasonable, and it remanded the case for further proceedings. *Id.* at 154.

Under the circumstances of this case, the seizure of the Vietnamese documents was unreasonable. Here, due to the allegations in the affidavit, ICE should have anticipated that many of the documents specified in the search warrant would be in Vietnamese. Although Vietnamese is not a language spoken by a large number of people in central Pennsylvania, ICE was able to secure an interpreter in order to interview A.V. and to accompany A.V. on the search of the house. This indicates that such interpreters were readily available. Moreover, even though the interpreter was at the home while the search was conducted, agents did not ask the interpreter to review any of the Vietnamese documents to determine whether they were specified in the warrant. The court further notes that the law enforcement agency that prosecuted this case, Immigrations and Customs Enforcement, is better equipped than most to deal with foreign language documents. Additionally, the government presented no testimony that there was any particular time pressure requiring the immediate seizure of the documents. Significantly, it appears that many of the documents seized were papers belonging to Lynda Dieu Phan's mother, which do not fall under any of the categories of documents that were subject to seizure under the warrant, and did not evidence any criminal activity. Under these circumstances, the court concludes that the seizure of all Vietnamese language

15

documents from Lynda Dieu Phan's office was unreasonable.  Accordingly, these documents will be inadmissible against Defendants at trial.[3]

**III.     Conclusion**

For the reasons set forth above, the motion to suppress will be granted in part and denied in part.  The seizure of the Vietnamese documents was unreasonable, and these documents will be inadmissible against Defendants at trial.  In all other respects, the motion is denied.

s/Sylvia H. Rambo
United States District Judge

Dated:  May 21, 2009.

---

[3] The *Leon* good faith exception to suppression is inapplicable here because unlike the warrant at issue in *$92,422.50*, the warrants in this case did not permit the seizure of all foreign language documents.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 1:08-CR-436 |
| **v.** | : | **JUDGE SYLVIA H. RAMBO** |
| **LYNDA DIEU PHAN**<br>**JUSTIN PHAN**<br>**DUC CAO NGUYEN** | : | |

## O R D E R

In accordance with the court's memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion to suppress (Doc. 57) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The motion is **GRANTED** with respect to the Vietnamese documents seized from Lynda Dieu Phan's home. These documents will be inadmissible against Defendants at trial.

(2) In all other respects, the motion is **DENIED**.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: May 21, 2009.